UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

JOSE F. GUERRERO                                         **COMPLAINT**

                                                        **JURY DEMAND**

                                    Plaintiff,

            -against-


THE CITY OF NEW YORK; JAMES P. O'NEILL, as Police
Commissioner, Police Department City of New York;
BENJAMIN B. TUCKER, as First Deputy Commissioner, Police
Department City of New York; ROSEMARIE MALDONADO,
as Deputy Commissioner, Trials, Police Department City of New
York; KEVIN S. RICHARDSON, as Deputy Commissioner,
Department Advocate's Office, Police Department City of New
York; KEVIN MALONEY, as Inspector, Force Investigation
Division, Police Department City of New York; THE CITY OF
YONKERS and MEGAN MADAUS, as Detective, Major Case
Squad, Police Department City of Yonkers, each sued individually
and in their official capacities' as employees of defendants' THE
CITY OF NEW YORK and THE CITY OF YONKERS

                                    Defendants'
--------------------------------------------------------------------------x

        The plaintiff JOSE F. GUERRERO through his attorney The Sanders Firm, P.C., files this

federal complaint against Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL;

BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON; KEVIN

MALONEY; THE CITY OF YONKERS and MEGAN MADAUS respectfully set forth and

allege that:

## **INTRODUCTION**

        This is an action for equitable relief and money damages on behalf of the plaintiff JOSE F.

GUERRERO, (hereinafter referred to as "Plaintiff") who was and is being deprived of his statutory

rights as an employee and citizen because of Defendants' THE CITY OF NEW YORK; JAMES P.

O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON;

KEVIN MALONEY; THE CITY OF YONKERS and MEGAN MADAUS'S race and gender discrimination leading to his false arrest, suspension and termination.

## JURISDICTION AND VENUE

1.     The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

     a.     the Civil Rights Act of 1871, 42 U.S.C. § 1983;

     b.      New York State Executive Law § 296; and

     c.     New York City Administrative Code § 8-107

2.     The unlawful employment practices, violations of plaintiff's civil rights complained of herein were committed within the Eastern and Southern Districts of New York.

## PROCEDURAL REQUIREMENTS

3.     Plaintiff has filed suit with this Court within the applicable statute of limitations period.

4.     Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

## PLAINTIFF

5.     Plaintiff JOSE GUERRERO is a male citizen of the United States of America, over twenty-one (21) years of age and resident of Westchester County.

## DEFENDANTS'

6.     Defendant THE CITY OF NEW YORK is a municipal corporation organized under the laws of the State of New York.

7.     Defendant JAMES P. O'NEILL, as Police Commissioner, Police Department City of New York.

8.      Defendant BENJAMIN B. TUCKER, as First Deputy Commissioner, Police Department City of New York.

9.      Defendant ROSEMARIE MALDONADO, as Deputy Commissioner, Trials, Police Department City of New York.

10.      Defendant KEVIN S. RICHARDSON, as Deputy Commissioner, Department Advocate's Office, Police Department City of New York.

11.      Defendant KEVIN MALONEY, as Inspector, Force Investigation Division, Police Department City of New York.

12.      Defendant THE CITY OF YONKERS is a municipal corporation organized under the laws of the State of New York.

13.      Defendant MEGAN MADAUS, as Detective, Major Case Squad, Police Department City of Yonkers.

## **BACKGROUND**

14.      Plaintiff alleges that in the Latino Officer Ass'n v. City of New York, et al. 209 F.R.D. 79 (2002), it was alleged that Latino and African-American officers are subject to formal and informal disciplinary proceedings more frequently that white officers, are punished more severely than white officers for the same violations, and are disciplined for infractions for which white officers are not.

15.      Plaintiff alleges that on or about February 1, 2004, Latino Officer Ass'n v. City of New York, et al., settled for $26.8 million dollars.

16.      Plaintiff alleges that as part of the settlement, Defendant THE CITY OF NEW YORK agreed to establish a Disciplinary Review Unit, titled the Employment Practices Unit, to review the NYPD's disciplinary process and how it affects employment discrimination.

3

17.     Plaintiff alleges that Defendant THE CITY OF NEW YORK has not established a Disciplinary Review Unit, titled the Employment Practices Unit, to review the NYPD's disciplinary process nor analyze how it affects employment discrimination.

18.     Plaintiff alleges that assuming Defendant THE CITY OF NEW YORK has established a Disciplinary Review Unit, titled the Employment Practices Unit, to review the NYPD's disciplinary process and analyze how it affects employment discrimination, this data is useless as he nor other male officers of color have access to assess whether they are being 'unfairly' disciplined.

19.     Plaintiff alleges that as part of the settlement, Defendant THE CITY OF NEW YORK agreed to develop a 'Know Your Rights' guide, which details the NYPD disciplinary process.

20.     Plaintiff alleges that Defendant THE CITY OF NEW YORK has not developed a 'Know Your Rights' guide, for department-wide distribution which details the NYPD disciplinary process.

21.     Plaintiff alleges that assuming Defendant THE CITY OF NEW YORK has developed a 'Know Your Rights' guide, for department-wide distribution which details the NYPD disciplinary process, this guide is useless as he nor other male officers' of color have access to assess whether they are 'unfairly' disciplined.

22.     Plaintiff alleges that as part of the settlement, Defendant THE CITY OF NEW YORK agreed to produce statistical reports on the NYPD Discipline System.

23.     Plaintiff alleges that has not produced statistical reports on the NYPD Discipline System.

24.     Plaintiff alleges that assuming Defendant THE CITY OF NEW YORK has

produced statistical reports on the NYPD Discipline System, this data is useless as he nor other male officers of color have access to assess whether they are being 'unfairly' disciplined.

25.     Plaintiff alleges that Defendant THE CITY OF NEW YORK claimed it had decided to conduct a review of at least one command each month to assess disciplinary actions taken and use information from their databases to train commanding officers about discipline trends.

26.     Plaintiff alleges that Defendant THE CITY OF NEW YORK has not reviewed at least one command each month to assess disciplinary actions taken and use information from their databases to train commanding officers about discipline trends.

27.     Plaintiff alleges that assuming Defendant THE CITY OF NEW YORK has reviewed at least one command each month to assess disciplinary actions taken and use information from their databases to train commanding officers about discipline trends, this data is useless as he nor other male officers of color have access to assess whether they are being 'unfairly' disciplined.

28.     Plaintiff alleges that since the settlement of Latino Officer Ass'n v. City of New York, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO and KEVIN S. RICHARDSON have continued their 'pattern and practice' of subjecting Latino and African-American officers to formal and informal disciplinary proceedings more frequently that white officers, are punished more severely than white officers for the same violations, and are disciplined for infractions for which white officers are not.

29.     Plaintiff alleges that he self-identifies as a Hispanic male.

30.     Plaintiff alleges that while employed with Defendant THE CITY OF NEW YORK as a Sergeant assigned to the Police Department City of New York (NYPD), he was a victim of

domestic abuse.

31.    Plaintiff alleges that on or about March 7, 2014, Defendant THE CITY OF NEW YORK through former Police Commissioner William J. Bratton appointed Defendant ROSEMARIE MALDONADO as deputy commissioner of trials, where she supervises the hearing officers, who along with her will preside over uniformed and civilian members' disciplinary trials.

32.    Plaintiff alleges that on or about July 27, 2014, Defendant THE CITY OF NEW YORK through former Police Commissioner William J. Bratton Defendant KEVIN RICHARDSON as deputy commissioner of the department advocate's office, where he prepares and prosecutes departmental trials.

33.    Plaintiff alleges that Defendant THE CITY OF NEW YORK hired Defendant KEVIN S. RICHARDSON an ex-Brooklyn prosecutor who vigorously defended the wrongful conviction of Mr. Jabbar Collins, an African-American male 'falsely' imprisoned for more than 15 years.

34.    Plaintiff alleges that in 2010, Defendant KEVIN S. RICHARDSON then an assistant district attorney for the former District Attorney for Kings County Charles Hynes, went to the United States District Court for the Eastern District of New York to defend the prosecution of Mr. Collins, who was 'falsely' convicted of killing a Williamsburg rabbi in 1995.

35.    Plaintiff alleges that Defendant KEVIN S. RICHARDON appeared amid mounting evidence that his former supervisor former Chief of the Rackets Bureau Michael C. Vecchione — who originally tried the case — had committed prosecutorial misconduct by coercing and threatening witnesses to make them testify against Mr. Collins.

36.    Plaintiff alleges that on or about February 16, 2011, Mr. Collins filed a federal civil rights lawsuit (Jabbar Collins v. City of New York, et al., 11 cv 00766) for his 'false' arrest and conviction.

37.    Plaintiff alleges that during the discovery phase, while under oath , former District Attorney for Kings County Hynes admitted that "someone involved in that case" failed to inform Mr. Collins's defense lawyer that a key witness had recanted.

38.    Plaintiff alleges that on or about August 19, 2014, Jabbar Collins v. City of New York, et al., settled for $10 million dollars.

39.    Plaintiff alleges that on or about November 5, 2014, Defendant THE CITY OF NEW YORK through former Police Commissioner William J. Bratton Defendant BENJAMIN B. TUCKER as first deputy commissioner, entrusted to design and implement a broad range of policy, programs, and training to strengthen community relations and improve the performance of the department.

40.    Plaintiff alleges that 'culturally' within the NYPD, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and their agents, harshly discipline officers' after disclosing they are victims of domestic abuse.

41.    Plaintiff alleges that Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO and KEVIN S. RICHARDSON 'unlawfully' use the NYPD Disciplinary System (Command Disciplines, Department Advocate's Office and Deputy Commissioner of Trials) to continue engaging in a 'pattern and practice' of using racial and gender stereotyping as the basis for 'unfairly' discipling male officers' of color.

42.    Plaintiff alleges that as evidence of Defendant THE CITY OF NEW YORK 'willful' pattern of using racial and gender stereotyping as the basis for disciplining male officers of color, it hired Defendants' BENJAMIN B. TUCKER; ROSEMARIE MALDONADO and KEVIN S. RICHARDSON.

43.    Plaintiff alleges that from August 2012 through December 23, 2015, Ms. Yahayra Feliz whom he has child in common with, physically and mentally abused him including threatening to have him fired from the NYPD.

44.    Plaintiff alleges that he reluctantly disclosed the domestic abuse to Defendants' THE CITY OF NEW YORK and JAMES P. O'NEILL.

45.    Plaintiff alleges that on or about December 23, 2015, while alone inside of his apartment, he was awaked by Ms. Feliz with a smack to his face.

46.    Plaintiff alleges that he lives alone.

47.    Plaintiff alleges that Ms. Feliz entered his apartment without authorization.

48.    Plaintiff alleges that at some point while arguing with Ms. Feliz, she was able to gain control of his department authorized Glock Model 26 9MM pistol.

49.    Plaintiff alleges that while struggling with Ms. Feliz attempting to re-gain control over pistol, it discharged striking her in the neck causing a flesh wound.

50.    Plaintiff alleges that on or about December 24, 2015, Defendants' THE CITY OF YONKERS and MEGAN MADAUS 'falsely' arrested and charged him reckless endangerment in the first degree.

51.    Plaintiff alleges that Defendants' THE CITY OF YONKERS and MEGAN MADAUS had no 'probable cause' to arrest him and they failed to follow paragraph (c) of subdivision 4 of Section 140.10 of the Criminal Procedure Law (Primary Physical Aggressor)

due to their racial and gender stereotyping believing he could not be a victim of domestic violence.

52.     Plaintiff alleges that based upon the 'false arrest' by Defendants' THE CITY OF YONKERS and MEGAN MADAUS, Defendants' THE CITY OF NEW YORK and JAMES P. O'NEILL suspended him for thirty (30) days without pay.

53.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and JAMES P. O'NEILL's suspension was violative of federal and state human rights laws particularly New York City Administrative Code § 8-107.1 (3) . See Matter of Reynolds v. Fraser 2004 NY Slip Op 24352 [5 Misc. 3d 758] September 24, 2004  http://law.justia.com/cases/new-york/other-courts/2004/2004-24352.html

54.     Plaintiff alleges that on or about January 11, 2016, Defendants THE CITY OF YONKERS and MEGAN MADAUS despite having no 'probable cause' to arrest him due to their racial and gender stereotyping believing he could not be a victim of domestic violence and there was an 'accidental' discharge, they continued to cooperate with the prosecution in Yonkers City Courts.

55.     Plaintiff alleges that on or about January 19, 2016, Defendants THE CITY OF YONKERS and MEGAN MADAUS despite having no 'probable cause' to arrest him due to their racial and gender stereotyping believing he could not be a victim of domestic violence and there was an 'accidental' discharge, they continued to cooperate with the prosecution in Yonkers City Courts.

56.     Plaintiff alleges that on or about January 25, 2016, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON ordered he to report to the Department Advocate's Office to receive formal Charges and

Specifications related to his arrest.

57.     Plaintiff alleges that on or about January 25, 2016, upon completion of the thirty (30) day suspension without pay, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON re-assigned him to the Military Extended Leave Desk (MELD) and ordered to report to the NYPD Internal Affairs Bureau (IAB) 315 Hudson Street New York, N.Y.

58.     Plaintiff alleges that upon arrival, Sergeant Fallon communicated Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON'S reporting conditions while under suspension with pay: he was told not to drive his vehicle, park his car within the areas restricted to that command, use public transportation, provide a cell-phone number, report at 9am every morning, upon entrance to the building produce the provided letter to the security officer that he is a suspended member of the service and he was reporting to IAB, the letter would have to be carried at all times.

59.     Plaintiff alleges that Sergeant Fallon further communicated that Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON did not want him to talk to anyone, stay within a defined area of the office until dismissed.

60.     Plaintiff alleges that through the Internal Affairs Bureau, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON ensured he and other suspended members of the service primarily officers of color, treated like zoo animals designed to humiliate them.

61.     Plaintiff alleges that through the Internal Affairs Bureau, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON

would follow he and other suspended members of the service primarily officers of color around as if they were criminals.

62.    Plaintiff alleges that through the Internal Affairs Bureau, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON never ensured he and other suspended members of the service primarily officers of color received employee assistance.

63.    Plaintiff alleges that through the Internal Affairs Bureau, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON these tactics were used against he and other suspended members of the service primarily officers of color to hasten their 'voluntary' separation from the department.

64.    Plaintiff alleges that on or about February 17, 2016, Defendants THE CITY OF YONKERS and MEGAN MADAUS despite having no 'probable cause' to arrest him due to their racial and gender stereotyping believing he could not be a victim of domestic violence and there was an 'accidental' discharge, they continued to cooperate with the prosecution in Yonkers City Courts.

65.    Plaintiff alleges that from February 2016 through March 2016, Ms. Feliz continued using the minor child in common as a 'psychological' weapon, denying visitation and other parental access.

66.    Plaintiff allege that in or around March 2016, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON denied him the ability to operate his karate school for economically disadvantaged families; therefore, he transferred the business to his brother, a business he has operated since 2012.

67.    Plaintiff alleges that on or about March 3, 2016, Defendants THE CITY OF

YONKERS and MEGAN MADAUS despite having no 'probable cause' to arrest him due to their racial and gender stereotyping believing he could not be a victim of domestic violence and there was an 'accidental' discharge, they continued to cooperate with the prosecution in Yonkers City Courts.

68.    Plaintiff alleges that from March 2016 through August 2016, Ms. Feliz continued using the minor child in common as a 'psychological' weapon, denying visitation and other parental access.

69.    Plaintiff alleges that in or around April 2016, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON ordered him to meet with NYPD Department Psychologist Dr. Catherine Lamstein.

70.    Plaintiff alleges that during the meeting, he disclosed to Dr. Lamstein that he was already seeing a therapist outside of the police department and the domestic abuse at the hands of Ms. Feliz.

71.    Plaintiff alleges that on or about April 4, 2016, Defendants THE CITY OF YONKERS and MEGAN MADAUS despite having no 'probable cause' to arrest him due to their racial and gender stereotyping believing he could not be a victim of domestic violence and there was an 'accidental' discharge, they continued to cooperate with the prosecution in Yonkers City Courts.

72.    Plaintiff alleges that on or about May 25, 2016, Defendants THE CITY OF YONKERS and MEGAN MADAUS despite having no 'probable cause' to arrest him due to their racial and gender stereotyping believing he could not be a victim of domestic violence and there was an 'accidental' discharge, they continued to cooperate with the prosecution in Yonkers City Courts.

73.     Plaintiff alleges that Westchester County Assistant District Attorney Wendy Parra through prior counsel offered him a plea bargain of reckless endangerment as a misdemeanor with no jail time.

74.     Plaintiff alleges that he declined the plea offer.

75.     Plaintiff alleges that Westchester County Assistant District Attorney Parra then pursued presenting the case before a Grand Jury.

76.     Plaintiff alleges that on or about June 3, 2016, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON ordered him to meet with NYPD Department Psychologist Dr. Lamstein.

77.     Plaintiff alleges that during the meeting, he disclosed further information to Dr. Lamstein that he was already seeing a therapist outside of the police department and the domestic abuse at the hands of Ms. Feliz.

78.     Plaintiff alleges that on or about June 6, 2016, Westchester County Assistant District Attorney Parra subpoenaed Ms. Feliz to testify before the Grand Jury.

79.     Plaintiff alleges Westchester County Assistant District Attorney Parra sent members of the Police Department City of Yonkers to bring her to the Grand Jury.

80.     Plaintiff alleges that Ms. Feliz communicated to Westchester County Assistant District Attorney Parra that the version presented to her by Defendants' THE CITY OF YONKERS and MEGAN MADAUS is 'inaccurate.'

81.     Plaintiff alleges that after Westchester County Assistant District Attorney Parra refused to accept that the version presented to her by Defendants' THE CITY OF YONKERS and MEGAN MADAUS is 'inaccurate' Ms. Feliz challenged Parra to take off her shoes so they can go outside and fight.

82.    Plaintiff alleges that Westchester County Assistant District Attorney Parra and she had to be separated.

83.    Plaintiff alleges that on or about June 10, 2016, he testified before the Grand Jury questioned by Westchester County Assistant District Attorney Parra.

84.    Plaintiff alleges that during the proceedings, Westchester County Assistant District Attorney Parra engaged in racial and gender stereotyping in front of the panel attempting to paint him as an old womanizer, fathering multiple children, etc., who intentionally or reckless shot Ms. Feliz out of jealousy.

85.    Plaintiff alleges that during the proceedings, he communicated to the panel the events which led to the 'accidental' shooting on December 23, 2015, and the history of domestic abuse he endured at the hands of Ms. Feliz.

86.    Plaintiff alleges that on or about June 16, 2016, Westchester County Assistant District Attorney Parra withdrew the felony complaint filed against him.

87.    Plaintiff alleges that on or about July 18, 2016, the case was dismissed and sealed.

88.    Plaintiff alleges that on or about July 28, 2016, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON ordered him to meet with the NYPD Force Investigation Division.

89.    Plaintiff alleges that during the interview, Defendant KEVIN MALONEY read a domestic incident report recorded by the Police Department City of Yonkers.

90.    Plaintiff alleges that he denied giving a statement to the Police Department City of Yonkers, Defendant KEVIN MALONEY accused him of lying.

91.    Plaintiff alleges that when he tried to communicate to Defendant KEVIN MALONEY his version of events and that he is a victim of domestic violence at the hands of

Ms. Feliz, Defendant KEVIN MALONEY ignored him.

92.    Plaintiff alleges that he immediately shut down because in the manner Defendant KEVIN MALONEY was responding to him.

93.    Plaintiff alleges that Defendant KEVIN MALONEY engaged in racial and gender stereotyping responding to him in an indifferent manner as if he could not be a victim of domestic violence protected under paragraph (c) of subdivision 4 of Section 140.10 of the Criminal Procedure Law (Primary Physical Aggressor), federal and state human rights laws particularly New York City Administrative Code § 8-107.1 (3) . See Matter of Reynolds v. Fraser 2004 NY Slip Op 24352 [5 Misc. 3d 758] September 24, 2004 http://law.justia.com/cases/new-york/other-courts/2004/2004-24352.html

94.    Plaintiff alleges that on or about August 24, 2016, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO and KEVIN S. RICHARDSON made a policy decision to block the release of formal disciplinary proceedings in the trial room as well as closing the room whenever police personnel records are discussed, claiming a police officer's disciplinary record is protected by Civil Rights Law § 50-a.

95.    Plaintiff alleges that Civil Rights Law § 50-a was "intended to apply to situations where a party to an underlying criminal or civil action is seeking documents in a police officer's personnel file, and was apparently designed to prevent 'fishing expeditions' to find material to use in cross-examination" (Matter of [*4]Capital Newspapers Div. of Hearst Corp. v Burns, 109 AD2d 92, 95 [1985], affd 67 NY2d 562 [1986] [citation omitted]; see Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 154 [1999]; Matter of Dunnigan v Waverly Police Dept., 279 AD2d 833, 834 [2001], lv denied 96 NY2d 710 [2001]; Carpenter v City of Plattsburgh, 105 AD2d at 298; Senate and Assembly Introducer Mem in Support, Bill Jacket, L

1976, ch 413; Mem of Div of Criminal Justice Servs, Bill Jacket, L 1976, ch 413).

96.    Plaintiff alleges that The Court of Appeals has confirmed that "the legislative intent underlying the enactment of Civil Rights Law § 50-a was narrowly specific, to prevent time-consuming and perhaps vexatious investigation into irrelevant collateral matters in the context of a civil or criminal action" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d at 569 [internal quotations marks and citation omitted]).

97.    Plaintiff alleges that legislative history does not specifically mentions the topic of disciplinary hearings. Doe v. City of Schenectady, 2011 N.Y. Slip Op 03694 App. Div. 3rd Dept May 5, 2011 https://law.justia.com/cases/new-york/appellate-division-third-department/2011/2011-03694.html

98.    Plaintiff alleges that on or about January 26, 2017, Defendant KEVIN RICHARDSON drafted a report on behalf of Defendant THE CITY OF NEW YORK concluding he fired his pistol at Ms. Feliz. The findings did not assess the possibility of an 'accidental' discharge with both he and Ms. Feliz's hands on the pistol.

99.    Plaintiff alleges that Defendant KEVIN MALONEY reached this conclusion because of racial and gender stereotyping disbelieving the possibility of an 'accidental' discharge while struggling to gain control of the pistol from Ms. Feliz.

100.    Plaintiff alleges that on or about February 6, 2017, Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL and BENJAMIN B. TUCKER adopted the report prepared by Defendant KEVIN MALONEY during a meeting with the Use of Force Review Board without challenge.

101.    Plaintiff alleges that Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL and BENJAMIN B. TUCKER nor did the Use of Force Review Board challenge

Defendant KEVIN MALONEY'S failure to assess other possibilities including an 'accidental' discharge with both he and Ms. Feliz's hands on the pistol.

102.    Plaintiff alleges that Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL and BENJAMIN B. TUCKER and the Use of Force Review Board engaged in racial and gender stereotyping rubberstamping Defendant KEVIN MALONEY'S report failing to challenge its veracity and other possibilities including an 'accidental' discharge and/or he could not be a victim of domestic violence protected under paragraph (c) of subdivision 4 of Section 140.10 of the Criminal Procedure Law (Primary Physical Aggressor), federal and state human rights laws particularly New York City Administrative Code § 8-107.1 (3). See Matter of Reynolds v. Fraser 2004 NY Slip Op 24352 [5 Misc. 3d 758] September 24, 2004 http://law.justia.com/cases/new-york/other-courts/2004/2004-24352.html

103.    Plaintiff alleges that on or about February 15, 2017, Defendants' THE CITY OF NEW YORK and BENJAMIN B. TUCKER adopted the report prepared by Defendant KEVIN MALONEY without challenge.

104.    Plaintiff alleges that Defendants' THE CITY OF NEW YORK and BENJAMIN B. TUCKER did not challenge Defendant KEVIN MALONEY'S failure to assess other possibilities including an 'accidental' discharge with both he and Ms. Feliz's hands on the pistol.

105.    Plaintiff alleges that on or about February 17, 2017, Defendants' THE CITY OF NEW YORK and JAMES P. O'NEILL adopted the report prepared by Defendant KEVIN MALONEY without challenge.

106.    Plaintiff alleges that Defendants' THE CITY OF NEW YORK and JAMES P. O'NEILL did not challenge Defendant KEVIN MALONEY'S failure to assess other possibilities including an 'accidental' discharge with both he and Ms. Feliz's hands on the pistol.

107.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and JAMES P.

O'NEILL sent the matter to Defendant KEVIN S. RICHARDSON to formally charge him with

misconduct.

108.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK; JAMES P.

O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON engaged in racial and

gender stereotyping rubberstamping Defendant KEVIN MALONEY'S report failing to challenge

its veracity and other possibilities including an 'accidental' discharge and/or he could not be a

victim of domestic violence protected under paragraph (c) of subdivision 4 of Section 140.10 of

the Criminal Procedure Law (Primary Physical Aggressor), federal and state human rights laws

particularly New York City Administrative Code § 8-107.1 (3). See Matter of Reynolds v. Fraser

2004 NY Slip Op 24352 [5 Misc. 3d 758] September 24, 2004   http://law.justia.com/cases/new-

york/other-courts/2004/2004-24352.html

109.     Plaintiff alleges that on or about April 25, 2017, Defendants' THE CITY OF

NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER and KEVIN S. RICHARDSON

using racial and gender stereotyping as a legal basis served him with Amended Charges and

Specifications alleging:

> **Specification No. 1 will remain the same and read:** 1 Said Sergeant Jose Guerrero, while assigned to the 45th Precinct, on or about December 23, 2015, engaged in conduct prejudicial to the good order, efficiency or discipline of the Department, to wit: said Sergeant was involved in a physical altercation with an individual known to this Department and discharged his off-duty 9mm Glock 26 firearm, striking the victim in her neck/ shoulder area.

> PG 203-10 Page 1, Para. 5     PUBLIC CONTACT-PROHIBITED CONDUCT

> **Specification No. 2 will remain the same and read:** 2 Said Sergeant Jose Guerrero, while assigned to the 45th Precinct, on or about December 23, 2015, engaged in conduct prejudicial to the good order, efficiency or discipline of the Department, to wit: said Sergeant failed to immediately identify himself as a member of service to the Yonkers Police Department.

PG 203-10 Page 1, Para. 5    PUBLIC CONTACT-PROHIBITED CONDUCT

**Specification No. 3 will remain the same and read:** 3 Said Sergeant Jose Guerrero, while assigned to the 45th Precinct, on or about December 23, 2015, within the confines of New York County, did wrongfully and without just cause prevent or interfere with an official Department Investigation, to wit: said Sergeant made misleading statements to members of the Yonkers Police Department.
PG 203-10 Page 1 Para 2(d)    PUBLIC CONTACT-PROHIBITED CONDUCT

**Specification No. 4 is added as follows:** 4 Said Sergeant Jose Guerrero, while assigned to the Military and Extended Leave Desk, on or about July 28, 2016 ,during an official investigation conducted by the New York City Police Department, pursuant to the provisions of Patrol Guide 206-13, did wrongfully make false and misleading statements regarding the events surrounding a physical altercation with an individual known to this Department wherein said Sergeant discharged his off-duty 9mm Glock 26 firearm.

PG 203-08 Page 1, Para 1    MAKING FALSE STATEMENTS

110.    Plaintiff alleges that on or about August 14, 2017 through September 19, 2017,

Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER;

ROSEMARIE MALDONADO and KEVIN S. RICHARDSON using racial and gender

stereotyping as a legal basis to adjudicate the Charges and Specifications in the department Trial

Room with Hearing Officer Assistant Trial Commissioner David S. Weisel as the reviewer of

evidence.

111.    Plaintiff alleges that on or about August 14, 2017, Ms. Feliz testified:

Feliz dropped off her son at home and left for Respondent's apartment around 2230 hours. She parked in the garage and entered the building. She knocked on his apartment door and he answered. Feliz admitted that she wanted "[t]o slap him because he's fresh." Feliz argued with Respondent about lying to her. She was upset because of his lack of communication. She denied that she was upset because she saw him shopping with another woman (Tr. 39-42,62, 65-66).

Once inside the apartment, Feliz saw Respondent's pistol on top of a table in the living room. Respondent was calm but •'uncomfortable" and •"upset." But Feliz was more upset. She admitted pushing and insulting him, telling him he was an asshole and a son of a bitch. Respondent told her to calm down but she did not. Both of them saw the pistol. Feliz "'touched it in a way." She "wanted to throw it

to him." She admitted that her "intentions at that time was to kill him." Respondent "got close to me" and told Feliz that "we had to be very careful, when a person is upset, doesn't listen, doesn't comprehend, doesn't hear, and a lot of bad things can happen." Both of them had the gun in their hands, but Feliz conceded that she picked it up first. Respondent grabbed the weapon "on my hand" and told her, "Things are going to turn out not the way they're supposed to." At one point, Respondent removed the ammunition from the weapon and the magazine dropped to the floor, but one bullet remained in the chamber. Feliz might have been holding the gun when Respondent did this. She "jumped on him" at this point. (Tr. 42-46, 48-51,66-73, 76, 95-96).

Feliz testified that she and Respondent were "struggling" when "all of a sudden a bullet came out" and hit her in the neck. She did not know how the gun fired, but Respondent did not point it at her and she still had her hand on the gun. She did not recall having her finger on the trigger. Feliz did not even notice that she was wounded and kept hitting Respondent and arguing with him. Respondent "grabbed" Feliz and "got nervous and . . . started crying that I was bleeding." He told her that they had to go to the hospital (Tr. 43-44, 73-77).

Feliz claimed that she told Madaus she picked up the gun that night. Feliz denied telling Madaus that Respondent pointed the weapon at her. Rather, Feliz was "explaining to [Madaus] with my hands that [Respondent] was telling me that there should not be any firearms when people are arguing because if there is, something bad might occur and behind that there's bad consequences." Feliz testified that she tried to explain how she was holding the gun, but " I don't know if she was understanding me because at that moment I was so sad and I was upset that I wasn't seeing what was going on with me." Feliz indicated that Madaus misinterpreted her talking with her hands as Respondent pointing the gun at her (Tr. 46-47, 55-57, 82-85).

112.    Plaintiff alleges that on or about August 14, 2017, Defendant MEGAN MADAUS testified that

she attended the NYPD Homicide School, determined that Ms. Feliz was the victim under (c) of

subdivision 4 of Section 140.10 of the Criminal Procedure Law (Primary Physical Aggressor)

because she was shot, he was the primary aggressor, other than pedigree information she did not

record any observations or statements in her notebook among other things.

113.    Plaintiff alleges that on or about September 18, 2018, Sergeant Neil Casey, Force

Investigation Division testified that during the department interview of July 28, 2016, Defendant

KEVIN MALONEY was told Ms. Feliz grabbed the firearm and during the struggle to retain control the gun discharged but, Ms. Feliz was never re-interviewed.

114.    Plaintiff alleges that Sergeant Neil Casey, Force Investigation Division testified that there is a difference between an intentional discharge and an accidental discharge.

115.    Plaintiff alleges that Sergeant Neil Casey, Force Investigation Division testified he is entitled to the benefit of a fair analysis but did not consider him to be a victim of domestic violence, neither Ms. Feliz's or his family were interviewed and there is no scientific evidence which proves who fired this weapon.

116.    Plaintiff alleges that Sergeant Neil Casey, Force Investigation Division testified there is no forensic evidence he fired the weapon. Ms. Feliz's DNA was not tested. Nor was the firearm tested for DNA.

117.    Plaintiff alleges that Sergeant Neil Casey, Force Investigation Division testified that he does not know whether the firearm can be accidently discharged without pulling the trigger.

118.    Plaintiff alleges that Sergeant Neil Casey, Force Investigation Division testified although he has seen more accidental discharges with Glock 9-millimeter handguns, that was not a consideration in this matter.

119.    Plaintiff alleges that on or about December 15, 2017, Hearing Officer Assistant Trial Commissioner David S. Weisel as the reviewer of evidence prepared a Report and Recommendation for Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO and KEVIN S. RICHARDSON, recommending he be found Guilty of all charges and the penalty of termination imposed.

120.    Plaintiff alleges that Hearing Officer Assistant Trial Commissioner Weisel's Report and Recommendation for Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO and KEVIN S. RICHARDSON is full of racial and gender bias along with speculation and conjecture.

121.    Plaintiff alleges that Hearing Officer Assistant Trial Commissioner Weisel, the Trial Commissioner's Office in general has a long history of preparing Report and Recommendation that are full of racial and gender bias along with speculation and conjecture primarily whenever there is a review of evidence against officers of color.

122.    Plaintiff alleges that Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO and KEVIN S. RICHARDSON the ultimate reviewers of the Report and Recommendation merely rubberstamp them without any true interactive review process to ensure objectively, fairness and the officer, primarily of color rights are protected.

123.    Plaintiff alleges that Hearing Officer Assistant Trial Commissioner Weisel's 'intentionally' ignores the testimony of Sergeant Neil Casey, Force Investigation Division that "there is no forensic evidence he fired the weapon. Ms. Feliz's DNA was not tested. Nor was the firearm tested for DNA."

124.    Plaintiff alleges that the testimony of Sergeant Casey is in direct conflict with the findings of the report created by Defendant KEVIN MALONEY approved by Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL and BENJAMIN B. TUCKER yet, Hearing Officer Assistant Trial Commissioner Weisel sustained Charges 1 and 4 against him.

125.    Plaintiff alleges that Hearing Officer Assistant Trial Commissioner Weisel's 'intentionally' ignored his rights under the 5th Amendment of the United States Constitution.

126.    Plaintiff alleges that Hearing Officer Assistant Trial Commissioner Weisel sustained Charge 2, citing People v. Samuel, 29 N.Y.2d 252 (1971)(obligation to identify self at scene of motor vehicle accident does not violate right against self-incrimination).

127.    Plaintiff alleges that Hearing Officer Assistant Trial Commissioner Weisel's application of Samuel is legally flawed. In Samuel the identification was required by the Vehicle and Traffic Law. Here, there was no statue requiring him to identify himself.

128.    Plaintiff alleges that Hearing Officer Assistant Trial Commissioner Weisel sustained Charge 3, solely upon racial and gender bias along with speculation and conjecture.

129.    Plaintiff alleges that Hearing Officer Assistant Trial Commissioner Weisel's 'intentionally' ignored his testimony and the objective, credible evidence that he did not fire the weapon; therefore, his speculation and conjecture about the veracity of Police Officer Robert Spink's testimony is also legally flawed.

130.    Plaintiff alleges that on or about December 15, 2017, Defendant ROSEMARIE MALDONADO merely rubberstamped Hearing Officer Assistant Trial Commissioner Weisel's Report and Recommendation without any true interactive review process to ensure objectively, fairness and his rights are protected.

131.    Plaintiff alleges that on or about February 1, 2018, Defendant JAMES P. O'NEILL merely rubberstamped Hearing Officer Assistant Trial Commissioner Weisel's Report and Recommendation without any true interactive review process to ensure objectively, fairness and his rights are protected.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RACE DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

132.    Plaintiff re-alleges Paragraphs 1 through 131 and incorporates them by reference as Paragraphs 1 through 131 of Count I of this Complaint.

133.    Plaintiff alleges defendants' JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at him from December 23, 2015.

134.    Plaintiff defendants' JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY caused him to suffer significant legal costs, emotional distress, and damage to his personal and professional reputation.

**COUNT II**
**GENDER DISCRIMINATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

135.    Plaintiff re-alleges Paragraphs 1 through 134 and incorporates them by reference as Paragraphs 1 through 134 of Count II of this Complaint.

136.    Plaintiff alleges defendants' JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at him from December 23, 2015.

137.    Plaintiff defendants' JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY caused him to suffer significant legal costs, emotional distress, and damage to his personal and professional reputation.

## COUNT III
## VIOLATION OF THE FOURTH AMENDMENT
## FALSE ARREST
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

138.    Plaintiff re-alleges Paragraphs 1 through 137 and incorporates them by reference as Paragraphs 1 through 137 of Count III of this Complaint.

139.    Plaintiff alleges Defendant MEGAN MADAUS'S under color of law, personally interfered with and deprived him of his constitutional rights due to his race and gender.

140.    Plaintiff alleges Defendant MEGAN MADAUS acting individually and in her official capacity as a public official of Defendant THE CITY OF YONKERS under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

141.    Plaintiff alleges because of Defendant MEGAN MADAUS'S, conduct he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT IV
## VIOLATION OF THE FOURTH AMENDMENT
## MALICIOUS PROSECUTION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

142.    Plaintiff re-alleges Paragraphs 1 through 141 and incorporates them by reference as Paragraphs 1 through 141 of Count IV of this Complaint.

143.    Plaintiff alleges Defendant MEGAN MADAUS'S under color of law, personally interfered with and deprived him of his constitutional rights due to his race and gender.

144.    Plaintiff alleges Defendant MEGAN MADAUS acting individually and in her official capacity as a public official of Defendant THE CITY OF YONKERS under color of law, and having been fully advised that he was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivations of his rights.

145.    Plaintiff alleges because of Defendant MEGAN MADAUS'S, conduct he suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT V
## MONELL CLAIM
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

146.    Plaintiff re-alleges Paragraphs 1 through 145 and incorporates them by reference as Paragraphs 1 through 145 of Count V of this Complaint.

147.    Plaintiff alleges defendants' THE CITY OF NEW YORK and THE CITY OF YONKERS through its agents caused his injuries.

148.    Plaintiff alleges defendants' THE CITY OF NEW YORK and THE CITY OF YONKERS actions of implementing 'official and un-official' policies of supporting race and gender stereotyping under color of law.

149.    Plaintiff alleges defendants' THE CITY OF NEW YORK and THE CITY OF YONKERS through its agents deprived him of his constitutional and statutory rights.

150.    Plaintiff alleges defendants' THE CITY OF NEW YORK and THE CITY OF YONKERS through its agent's actions caused him injuries.

151.    Plaintiff alleges defendants' THE CITY OF NEW YORK and THE CITY OF

YONKERS through its agents caused him to sustain damages.

## COUNT VI
## RACE DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

152.    Plaintiff re-alleges Paragraphs 1 through 151 and incorporates them by reference as Paragraphs 1 through 151 of Count VI of this Complaint.

153.    Plaintiff alleges the New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

154.    Plaintiff alleges Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY discriminated against him because of his race.

155.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of THE CITY OF NEW YORK, he suffered the indignity of race discrimination and great humiliation.

156.    Plaintiff alleges Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY'S violations caused him mental anguish, emotional distress, and loss of employment opportunities.

## COUNT VII
## GENDER DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

157.    Plaintiff re-alleges Paragraphs 1 through 156 and incorporates them by reference as Paragraphs 1 through 156 of Count VII of this Complaint.

158.    Plaintiff alleges the New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

159.    Plaintiff alleges Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY discriminated against him because of his gender.

160.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of THE CITY OF NEW YORK, he suffered the indignity of gender discrimination and great humiliation.

161.    Plaintiff alleges Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY'S violations caused him mental anguish, emotional distress, and loss of employment opportunities.

**COUNT VIII**
**RACE DISCRIMINATION**
**IN VIOLATION OF**
**NEW YORK CITY ADMINISTRATIVE CODE § 8-107**

162.    Plaintiff re-alleges Paragraphs 1 through 161 and incorporates them by reference as Paragraphs 1 through 161 of Count VIII of this Complaint.

163.    Plaintiff alleges the New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their race.

164.    Plaintiff alleges Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY discriminated against him because of his race.

165.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of THE CITY OF NEW YORK, he suffered the indignity of race discrimination and great humiliation.

166.    Plaintiff alleges Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY'S violations caused him mental anguish, emotional distress, and loss of employment opportunities.

**COUNT IX**
**GENDER DISCRIMINATION**
**IN VIOLATION OF**
**NEW YORK CITY ADMINISTRATIVE CODE § 8-107**

167.    Plaintiff re-alleges Paragraphs 1 through 166 and incorporates them by reference as Paragraphs 1 through 166 of Count IX of this Complaint.

168.    Plaintiff alleges the New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

169.    Plaintiff alleges Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY discriminated against him because of his gender.

170.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of THE CITY OF NEW YORK, he suffered the indignity of gender discrimination and great humiliation.

171.    Plaintiff alleges Defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE MALDONADO; KEVIN S. RICHARDSON and KEVIN MALONEY'S violations caused him mental anguish, emotional distress, and loss of

employment opportunities.

## JURY TRIAL

172.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands compensatory and punitive damages from Defendants'

THE CITY OF NEW YORK; JAMES P. O'NEILL; BENJAMIN B. TUCKER; ROSEMARIE

MALDONADO; KEVIN S. RICHARDSON; KEVIN MALONEY; THE CITY OF YONKERS

and MEGAN MADAUS jointly and severally, in an amount to be determined at trial, plus

available statutory remedies, both legal and equitable, interests and costs.

Dated:  September 24, 2018
New York, N.Y.


Respectfully submitted,

By:    _____
Eric Sanders

Eric Sanders, Esq.
**THE SANDERS FIRM, P.C.**
30 Wall Street, 8th Floor
New York, N.Y. 10005
(212) 652-2782 (Business Telephone)
(212) 652-2783 (Facsimile)

Website: http://www.thesandersfirmpc.com