UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JOSE F. GUERRERO,

      Plaintiff,

  -against-

THE CITY OF NEW YORK; JAMES P. O'NEILL,
as Police Commissioner, Police Department City of
New York; BENJAMIN B. TUCKER, as First
Deputy Commissioner, Police Department City of
New York; ROSEMARIE MALDONADO, as
Deputy Commissioner, Trials, Police Department
City of New York; KEVIN S. RICHARDSON, as
Deputy Commissioner, Department Advocate's
Office, Police Department City of New York;
KEVIN MALONEY, as Inspector, Force
Investigation Division, Police Department City of
New York; THE CITY OF YONKERS and
MEGAN MADAUS, as Detective, Major Case
Squad, Police Department City of Yonkers, each
sued individually and in their official capacities' as
employees of defendants' THE CITY OF NEW
YORK and THE CITY OF YONKERS ,

      Defendants.

--------------------------------------------------------------X

**MEMORANDUM & ORDER**

18-CV-5353 (NGG) (RER)




NICHOLAS G. GARAUFIS, United States District Judge.

  Plaintiff Jose F. Guerrero, a former New York City police officer, brings this action against the City of Yonkers and Megan Madus, a Yonkers Police Department detective (collectively "the Yonkers Defendants") and the City of New York ("the City"); James P. O'Neill, Commissioner; Benjamin B. Tucker, Deputy Commissioner; Rosemarie Maldonado, Deputy Commissioner; Kevin S. Richardson, Deputy Commissioner; and Kevin Maloney, Inspector (collectively "the NYC Defendants"). (*See* Compl. (Dkt. 1).) Plaintiff asserts claims for

1

false arrest and malicious prosecution against the Yonkers Defendants pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution and claims for race and gender discrimination against the NYC Defendants pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, as well as state and local human rights laws. (*Id.* ¶¶ 132-171). Before the court is the NYC Defendants' motion to dismiss Counts I, II, V, VI, VII, VIII, and IX of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. To Dismiss (Dkt. 24).)

For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

### A. Factual Allegations

For the purposes of assessing the NYC Defendants' motion to dismiss, the court accepts as true the following facts as alleged in the complaint. *N.Y. Pet Welfare Ass'n. v. City of New York*, 850 F.3d 79, 86 (2d. Cir. 2017).

Plaintiff's claims arise out of the NYC Defendants' actions following a domestic altercation in Yonkers between Plaintiff and Ms. Yahayra Feliz. (Compl. ¶¶ 43, 45-49.) Plaintiff alleges that Feliz physically and mentally abused him from August 2012 through December 23, 2015. (*Id.* ¶ 43.) On December 23, 2015, she allegedly entered Plaintiff's apartment without permission and awakened him with a "smack to his face." (*Id.* ¶¶ 45, 47.) During the ensuing argument, Plaintiff alleges that Feliz gained control of his NYPD-authorized pistol and, while he was attempted to regain control over the gun, it discharged and struck Feliz in the neck. (*Id.* ¶¶ 48-49.) According to Plaintiff, Feliz suffered a "flesh wound." (*Id.* ¶ 49.) Feliz's account differs in some respects, but she agrees that she picked up the gun first and that the gun discharged during an ensuing struggle. (*Id.* ¶ 111.)

2

On December 24, 2015, Defendant Megan Madaus (a Detective with the City of Yonkers Police Department) arrested Plaintiff. (*Id.* ¶ 50.) Plaintiff was charged with reckless endangerment in the first degree. (*Id.*) Plaintiff claims that there was no probable cause for his arrest and alleges that Madaus refused to believe he could have been a victim of domestic abuse due to racial and gender stereotyping. (*Id.* ¶ 51.) Plaintiff alleges that he later testified before a Grand Jury empaneled in this case, and "that during the proceedings, Westchester County Assistant District Attorney Parra engaged in racial and gender stereotyping in front of the panel attempting to paint him as an old womanizer, fathering multiple children, etc., who intentionally or recklessly shot Ms. Feliz out of jealousy." (*Id.* ¶¶ 83-84.) The felony complaint filed against him was withdrawn shortly thereafter, and the case was dismissed and sealed on July 18, 2016. (*Id.* ¶¶ 86-87.)

Following the arrest, Plaintiff was suspended for thirty days without pay from his job as a NYPD police officer. (*Id.* ¶ 52.) On January 25, 2016, he was reassigned to the Military Extended Leave Desk ("MELD") and subjected to restrictive conditions regarding his employment. (*Id.* ¶¶ 57-58.) Plaintiff alleges that, through the imposition of these conditions (including being directed not to speak "to anyone" and to "stay within a defined area of the office"), the NYC Defendants "ensured that he and other suspended members of the service[,] primarily officers of color, [were] treated like zoo animals[.]" (*Id.* ¶¶ 59-60.) He alleges that these conditions were "designed to humiliate them[,]" and that the NYC Defendants used these tactics against "primarily officers of color to hasten their 'voluntary' separation from the department." (*Id.* ¶¶ 60, 63.)

Plaintiff then met with Defendant Kevin Maloney with the NYPD Force Investigation Division ("FID"). (*Id.* ¶ 88.) Plaintiff alleges that he "tried to communicate . . . his version of

3

events[,]" but that Maloney "engaged in racial and gender stereotyping [by] responding to him as if he could not be a victim of domestic violence[.]" (*Id.* ¶¶ 91, 93.) The report adopted by the City on February 6, 2017 concluded that Plaintiff fired his pistol at Feliz and did not consider the possibility of an "accidental discharge[.]" (*Id.* ¶¶ 98-100.) Following a hearing process, Plaintiff was terminated from his job despite his repeated attempts to inform various City officials that he was a victim of domestic abuse. (*Id.* ¶¶ 130-31.)

Plaintiff also claims there are discriminatory patterns in the disciplinary process at the NYPD. He alleges ongoing racial discrimination, pointing to a prior settled lawsuit in which the plaintiffs alleged that Latino and African-American officers are subject to disciplinary hearings more frequently than white officers, are punished more severely for the same violations as white officers, and are disciplined for infractions for which white officers are not. (*Id.* ¶ 14 (citing *Latino Officer Ass'n City of New York v. City of New York, et al.*, 209 F.R.D. 79 (2002).) Plaintiff alleges that the City has failed to fulfill its alleged obligations under that settlement agreement, and that NYPD disciplinary practices remain discriminatory against officers of color. (*Id.* ¶¶ 15-28.) He additionally alleges that "'culturally' within the NYPD, [the NYC Defendants] and their agents[] harshly discipline officers' [sic] after [they] disclos[e] they are victims of domestic abuse." (*Id.* ¶ 40.)

B. Procedural History

Plaintiff filed this action on September 24, 2018. (Compl. (Dkt. 1).). In his complaint, Plaintiff brings causes of action under 42 U.S.C. § 1983 ("Section 1983"), the New York State Human Rights law ("NYHRL"), and the New York City Human Rights Laws ("NYCHRL"). (*Id.* ¶¶ 132-171.) On May 3, 2019, the NYC Defendants submitted a fully briefed motion to dismiss Counts I, II, V, VI, VII, VIII, and IX of the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6). (Defs. Mem. of Law in Supp. Of Mot. to Dismiss ("Mem") (Dkt.25); Pl. Mem. in Opp'n to Defs, Mot. to Dismiss ("Opp.") (Dkt. 26); Defs. Reply Mem. in Supp. Of Mot. to Dismiss ("Reply") (Dkt. 27). The NYC Defendants argue that all of Plaintiff's claims against the NYC Defendants should be dismissed because the complaint fails to allege any specific facts indicating that Plaintiff's race or gender was relevant to either his suspension or termination from the NYPD. (Mem. at 8-12). The NYC Defendants also argue that the complaint fails to adequately allege *Monell* liability on the part of the City. (*Id.* at 12-13.)

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw all reasonable inferences from these allegations in favor of the plaintiff. *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '*[f]actual* allegations must be enough to raise a right to relief

above the speculative level.'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. Section 1983 Claims (Counts I & II)

Under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Where, as here, a Section 1983 claim is based on equal protection, the "violation of a right" element is analyzed under Title VII's burden-shifting framework. *Id.*

Courts rely on the three-part burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze Title VII discrimination claims. *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). First, the plaintiff must establish a prima facie case of discrimination by showing that: "(1) he is a member of a protected class; (2) he was performing satisfactorily; (3) he was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Jeter v. New York City Dep't of Educ.*, 549 F. Supp. 2d 295, 306 (E.D.N.Y. 2008) (internal citations and quotations omitted). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). Once the defendant does so, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason was merely a pretext. *Id.*

In Title VII cases, "at the initial stage of a litigation, the plaintiff's burden is minimal—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent,'" in taking an adverse employment action. *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.2d 297, 311 (2d Cir. 2015). Therefore, "to defeat a motion to dismiss . . . a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his [membership in the protected group] was a motivating factor in the employment decision." *Id.* at 87.

Here, Plaintiff fails to meet even this "minimal" burden because the complaint fails to allege any specific facts giving rise to the inference that Plaintiff's status as a Hispanic man was a "motivating factor" in his suspension and termination from the NYPD. Title VII plaintiffs can show "circumstances giving rise to an inference of discrimination" by pleading specific, concrete facts that, for instance, an employer made "invidious comments about others in employee's protected group," *Littlejohn*, 795 F. 3d at 312, or that an employer gave similarly situated employees preferential treatment as compared to the plaintiff. *See Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010).

Plaintiff pleads no such concrete facts. The crux of Plaintiff's argument is the assertion, repeated throughout the complaint, that the various NYC Defendants "engaged in racial and gender stereotyping" towards Plaintiff because they simply could not believe (1) that a Hispanic man could be the victim of domestic violence or (2) that, as a Hispanic man, Plaintiff could be telling the truth that the incident involving Ms. Feliz resulted from an "accidental" and not "intentional" discharge of his firearm. (*See, e.g.*, Compl. ¶¶ 93, 99, 102, 108-10.) Yet, these conclusory claims are merely "'naked assertion[s]' devoid of 'further factual enhancement,'"

7

which are insufficient to save a claim from dismissal. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 546).

For example, Plaintiff alleges that the NYC Defendants ordered him to meet with FID on or about July 28, 2016 to go over the off-duty shooting incident. (Compl. ¶ 88.) Plaintiff alleges that at that meeting, Defendant Kevin Maloney accused Plaintiff of lying when Plaintiff denied giving a prior statement to the Yonkers Police Department that he had fired his weapon and instead tried to communicate "[Plaintiff's] version of events and that he [was] a victim of domestic abuse at the hands of Ms. Feliz." (*Id.* ¶¶ 89-93.) Plaintiff then asserts that Maloney "engaged in racial and gender stereotyping [by] responding to him in an indifferent manner as if he could not be a victim of domestic violence," (*id.* ¶ 93), and then, because of "racial and gender stereotyping," failed to consider in the official FID report that Plaintiff's gun had "accidentally discharged" (*id.* ¶ 98-99).

Yet, other than repeating the conclusory phrase "racial and gender stereotyping," Plaintiff fails to allege specific facts that give rise to an inference that Maloney's actions were motivated by either racial or gender animus or stereotyping in any way. That same limitation—a conclusory incantation of "racial and gender stereotyping" coupled with no specific factual allegations for support—plagues Plaintiff's argument throughout. (*See* Opp. at 17 (Plaintiff arguing the complaint "clearly alleges" that the NYC Defendants "engaged in racial and gender stereotyping" without pointing to concrete factual allegations); Opp. at 19 (Plaintiff asserting that the NYC Defendants failed to "conduct an adequate investigation regarding race and gender discrimination" without pointing to concrete factual allegations); Opp. at 21 (Plaintiff asserting that the NYC Defendants "rubberstamped" the FID report due to "racial and gender stereotyping" without pointing to concrete factual allegations).) Nor does Plaintiff even allege

facts to suggest the reason for his suspension and termination was anything other than the determination made by the NYPD that he had violated various police guide regulations. *See Watson v. Williamsburg Collegiate Charter*, 17-CV-4150 (PKC), 2018 WL 3241316, at *4 (E.D.N.Y. July 3, 2018) ("[T]here is nothing in Plaintiff's complaint indicating that Defendant took any action against Plaintiff because of her race, and, therefore she does not assert any nonconclusory factual matter sufficient to nudge [her] claims across the line from conceivable to plausible to proceed") (citations omitted).

Much of Plaintiff's argument is a critique on the merits of the internal NYPD disciplinary process and its conclusions as to what happened in the off-duty shooting incident involving Plaintiff and Ms. Feliz. For instance, Plaintiff asserts that his Hearing Officer "ignored . . . objective, credible evidence that he did not fire his weapon," (Compl. ¶ 129) and that Defendant Maldonado "merely rubberstamped" the Hearing Officer's report and recommendation "without any true interactive review process to ensure" objectively and fairness. (*Id.* ¶ 130.) However, the merits of the NYPD internal disciplinary process is not before the court, and the fact that Plaintiff casts his repeated critiques of that process as the result of "racial and gender bias," (*see, e.g.*, Opp. at 18), does not transform Plaintiff's grievances into a cognizable claim under Section 1983. *See, e.g., Rowe v. New York State Dep't. of Taxation and Fin.*, 786 F. App'x 302, 305 (2d Cir. 2019) (summary order) (affirming district court's dismissal of complaint under Title VII that merely alleged "conclusory allegations" that adverse employment action was due to racial animus); *Gindi v. Bennett*, No. 15-CV-6475 (RRM), 2018 WL 4636794, at *3 (E.D.N.Y. Sept. 27, 2018) (dismissing complaint for "fail[ure] to allege circumstances that could give rise to an inference of discrimination," noting that the "link between [plaintiff's] membership in a

protected class and the alleged discrimination is entirely conclusory"). As such, Counts I & II are dismissed.

**B.  Municipal Liability (Count V)**

A municipality cannot be held liable pursuant to 42 U.S.C. § 1983 under a theory of respondeat superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978). To the contrary, a municipality may only be held liable for the constitutional violations of its employees when such violations result from the municipality's official policy. *Id.* at 693. Such a policy may be (1) an express policy, (2) "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law,'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citations and quotations omitted) or (3) a decision by a person with "final policymaking authority," *see Praprotnik*, 485 U.S. at 123; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986).

However, "*Monell* does not provide a separate cause of action for the failure by the government to train[, supervise, or discipline] its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Accordingly, as the court has dismissed Plaintiff's underlying Section 1983 claims, it need not reach the question of whether Plaintiff has adequately pleaded a *Monell* claim. *See id.* ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014) (summary order) ("Because [plaintiff] has not alleged a valid underlying constitutional deprivation, his

claim against New York City pursuant to *Monell* . . . must also fail." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Accordingly, Count V is dismissed.

### C. New York State Executive Law Article 15 ("NYHRL") Claims (Counts VI & VII)

Plaintiff brings his NYHRL claim under § 296, which defines "unlawful discriminatory practice[s]" in the state of New York. N.Y. Exec. Law 296. "New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII." *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999). Because Plaintiff has failed to make out employment discrimination claims under the Title VII standard based on either race or gender, he likewise fails to make out an employment discrimination case under NYHRL. *See McGrath v. Arroyo*, No. 17-CV-1461 (NGG), 2019 WL 3754459, at *13 (E.D.N.Y. Aug. 8, 2019). As such, Counts VI & VII are dismissed.

### D. New York City Human Rights Law ("NYCHRL") Claims (Counts VIII & IX)[1]

Although the NYCHRL claims had for many years "been treated as coextensive with state and federal counterparts," the New York City Council, in passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), "rejected such equivalence" in favor of a broader remedial scope. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). The Restoration Act established two new rules of construction for the NYCHRL: (1) "a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a floor below which the City's Human Rights law cannot fall'"; and (2) a requirement that the NYCHRL provisions "be construed liberally for the accomplishment of the uniquely broad and

---

[1] Counts VIII and IX of Plaintiff's complaint bring claims under the NYCHRL. (*See* Compl. ¶¶ 162-171). In the allegations for each count, however, Plaintiff refers to §296 of the NYSHRL. (*Id.* ¶ 163; ¶ 168). The court assumes Plaintiff intended to refer to §8-107 of the New York City Administrative Code and construes the complaint in that manner.

11

NYCHRL provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Restoration Act §§ 1, 7). The Second Circuit has clarified that these amendments to the Restoration Act require courts to analyze NYCHRL claims "separately and independently from any federal and state law claims." *See id.* The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (1st Dep't 2011).)[2]

Section 8-107(a) of the NYCHRL states that it is an "unlawful discriminatory practice ... [f]or an employer . . . because of the actual or perceived age, race, . . . gender, [or] disability . . . [t]o discriminate against such person in . . . conditions or privileges of employment." N.Y.C. Admin. Code § 8-107. In contrast to Title VII, NYCHRL "does not require 'a connection between the discriminatory conduct and a materially adverse employment action.'" *Garrigan v. Ruby Tuesday, Inc.*, No. 14-CV-155 (LGS), 2014 WL 2134613, at *3 (S.D.N.Y. May 22, 2014) (quoting *Mihalik*, 615 F.3d at 113). Instead, the proper inquiry under the NYCHRL is whether the plaintiff "was treated 'less well' because of her [membership in a protected class]." *Mihalik*, 615 F.3d at 111.

---

[2] It should be noted that in 2016 the New York City Council again amended the NYCHRL to explain that three Appellate Division cases—*Albunio v. City of New York*, 16 N.Y.3d 472 (2011), *Bennett v. Health Management Systems, Inc.*, 936 N.Y.S. 2d 112 (1st Dep't 2011), and the majority opinion in *Williams v. New York City Housing Authority*, 872 N.Y.S. 2d 27 (1st Dep't 2009)—have "correctly understood and analyzed the liberal construction requirement of subdivision a of this section" and have "developed legal doctrines accordingly that reflect the broad and remedial purposes of this title." N.Y.C. Local Law No. 35 of 2016 (Mar. 28, 2016) (codified at N.Y.C. Admin. Code § 8-130). The analysis underlying these cases therefore must guide any court's review of claims under the NYCHRL.

Although the Restoration Act requires that courts construe the NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible," courts "must be mindful that the NYCHRL is not a 'general civility code.'" *Mihalik*, 715 F.3d at 110 (citing *Williams v. N.Y.C. Housing Auth.*, 872 N.Y.S. 2d 27, 40-41 (1st Dep't 2009)). "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. It is not enough that a plaintiff has an overbearing or obnoxious boss. [He] must show that [he] has been treated less well at least in part 'because of [his protected characteristic].'" *Id.* (citing *Williams*, 872 N.Y.S. 2d at 39, 40 n.27).

Even under the NYCHRL's broad and liberal standard, Plaintiff's discrimination claims fail because, for the reasons described earlier in this opinion, he has not plausibly alleged that any differential treatment he suffered was "caused by a discriminatory motive," even in part. *See Milhalik*, 715 F.3d at 110. Beyond mere conclusory assertions, Plaintiff must plead specific facts as to why he was treated "less well at least in part" because of his race or gender. Having failed to do so, Counts VIII and IX are dismissed.

## IV. CONCLUSION

For the foregoing reasons, the NYC Defendants' motion to dismiss is GRANTED in its entirety. Counts I, II, V, VI, VII, VIII, and IX are dismissed. The Clerk of Court is respectfully DIRECTED to terminate Defendants City of New York, James P. O'Neill, Benjamin B. Tucker, Rosemarie Maldonado, Kevin S. Richardson, and Kevin Maloney from the case and to amend the caption accordingly.

SO ORDERED.

                                                       s/Nicholas G. Garaufis

Dated: Brooklyn, New York                             NICHOLAS G. GARAUFIS
       February 4, 2020                                  United States District Judge