UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
JOSE F. GUERRERO,

                       Plaintiff,

      -against-

THE CITY OF YONKERS and MEGAN
MADAUS, as Detective, Major Case Squad,
Police Department City of Yonkers, sued
individually and in her official capacity and as
an employee of defendant THE CITY OF
YONKERS,

                       Defendants.
---------------------------------------------------------

**MEMORANDUM & ORDER**

18-CV-5353 (NGG) (RER)

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendants' motion for summary judgment. (*See* Mot. Summ. J. (Dkt. 43-40).) Plaintiff Jose Guerrero opposes the motion. (*See* Opp. (Dkt. 44-25).)[1] For the reasons stated below, the Defendants' motion is GRANTED.

---

[1] Guerrero's opposition brief also asks the court to grant summary judgment in his favor. (*See generally* Opp.) The brief does not make any independent arguments in favor of summary judgment; rather it asks the court to enter summary judgment for Guerrero for all the same reasons that it contends Defendants' motion for summary judgment should be denied. (*Id.*) On May 14, 2021, the Defendants moved this court for a pre-motion conference to discuss an anticipated motion for summary judgment. (*See* 5/14/2021 PMC Letter (Dkt. 36).) Guerrero's counsel also requested permission to move for summary judgment. (*See* 5/19/2021 PMC Letter (Dkt. 37) at 1.) The court held a pre-motion conference on June 9, 2021 to discuss the proposed summary judgment motions and to set a briefing schedule for opening motions, oppositions, and replies. (6/9/2021 Minute Entry.) Defendants represent that they timely served their opening motion on Guerrero, but Guerrero did not reciprocate. (*See* Reply (Dkt. 46) at 1 n.1.) Rather, Guerrero's opposition brief to Defendants' motion purported to serve as his own motion for summary judgment.

1

## I. BACKGROUND

### A. Undisputed Facts

The following facts are undisputed except as noted and are taken from the Defendants' Rule 56.1 statement. (*See* Defs' 56.1 St. (Dkt. 43-39); Pl's 56.1 Resp. (Dkt. 45).) Citation to a party's 56.1 statement incorporates the evidentiary materials cited therein. Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it. [2] [3]

---

(*Id.*; Opp.) Guerrero did not submit a notice of motion or statement of undisputed facts, as is required for summary judgment motions under this district's local rules. *See* Local Civ. R. 7.1(a), 56.1(a). Because Guerrero did not submit a standalone motion for summary judgment by the deadline for opening motions and did not submit a notice of motion or statement of undisputed facts, the court will construe his opposition brief as just that rather than a joint opposition brief and motion for summary judgment.

[2] The paragraph numbering in Guerrero's 56.1 response diverges from that in the Defendants' 56.1 statement around paragraph 60. In instances where the two diverge, the court adopts the numbering from the Defendants' 56.1 statement.

[3] The court notes at the outset that Guerrero's 56.1 response often denies assertions made in Defendants' 56.1 statement without citing any evidence. "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c). "Each statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." *Id.* at 56.1(d). "If the opposing party [] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannulo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Accordingly, where Defendants' 56.1 statement makes an assertion that is properly supported by the record and Guerrero's 56.1 statement responds with a denial without a citation to the record, the court

2

At approximately 11:46 p.m. on December 23, 2015, Guerrero, then a sergeant with the New York City Police Department ("NYPD"), walked his then on-and-off again girlfriend Yahayra Feliz into the emergency room at St. John's Riverside Hospital in Yonkers, New York with a gunshot wound to her neck. (Defs' 56.1 St. ¶¶ 1-2; Pl's 56.1 Resp. ¶¶ 1-2.) Guerrero then spoke with hospital security about Feliz's injury and advised them to call the police. (Defs' 56.1 St. ¶ 3; Pl's 56.1 Resp. ¶ 3.)

Defendant Megan Madaus, a Detective with the Yonkers Police Department ("YPD") was sent to the hospital along with Detective Sergeant Charles DeMatteo, Detective Dennis Mullin, Officer Douglas Brady, and Officer Robert Spink. (Defs' 56.1 St. ¶¶ 8, 16, 24; Pl's 56.1 Resp. ¶¶ 8, 16, 24.)[4] Brady and Spink were the first officers to arrive and spoke with Guerrero in the Emergency Department waiting room. (Defs' 56.1 St. ¶¶ 16-17; Pl's 56.1 Resp. ¶ 16-17; *see also* Ex. I to Chafizadeh Decl. (Dkt. 43-10) at 11:13-11:45.) After Madaus and Feliz arrived, Brady and Spink informed them that Feliz was in a CAT scan and that Guerrero had driven her to the hospital. (Defs' 56.1 St. ¶ 25; Pl's 56.1 Resp. ¶ 25.)

---

considers the Defendants' assertion admitted. (*See, e.g.*, Pl's 56.1 Resp. ¶¶ 77, 83, 166, 197.)

[4] While evidence cited in a Rule 56.1 statement must be admissible, *see* Local Civ. R. 56.1(d), this pertains to the contents of evidence rather than its form. *See Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (Summary Order); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). Despite Guerrero's insistence otherwise, (*see e.g.*, Pl's 56.1 Resp. ¶ 4), Defendants' citations to video and audio recordings are thus not impermissible hearsay by virtue of their form. *See Perpall v. Pavetek Corp.*, No. 12-CV-336 (PKC), 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017). Moreover, out-of-court statements introduced for establishing whether there was probable cause for an arrest are not offered for their truth and do not constitute hearsay under Federal Rule of Evidence 801(c). *See Sheikh v. City of New York*, No. 05-CV-4718 (NGG), 2008 WL 5146645, at *1 n.3 (E.D.N.Y. Dec. 5, 2008); Fed. R. Evid. 801(c).

3

After the CAT scan, Feliz met with Detectives Madaus and Mullin with Guerrero present. (Defs' 56.1 St. ¶ 39; Pl's 56.1 Resp. ¶ 39.) She stated that she had been shot while walking to her apartment at 50 St. Andrews Place and subsequently called Guerrero. (Defs' 56.1 St. ¶¶ 40-41; Pl's 56.1 Resp. ¶¶ 40-41.)[5] While recounting these events, Feliz appeared nervous and kept looking back at Guerrero. (Defs' 56.1 St. ¶ 44; Pl's 56.1 Resp. ¶ 44.) At one point during the conversation, Guerrero interjected to ask Feliz in Spanish "why are you lying[?]" (Defs' 56.1 St. ¶ 40; Pl's 56.1 Resp. ¶ 40; Ex. 17 to Sanders Decl. (Dkt. 44-17) at 41:2-45:25.) Madaus concluded that Feliz's story was erroneous based on her wounds being consistent with a close-range shooting and the manner in which she responded to questions. (Defs' 56.1 St. ¶¶ 45-46, 48; Pl's 56.1 Resp. ¶¶ 45-46, 48.) Later, after Guerrero left the room, Madaus again asked Feliz about the cause of her injuries and whether she was a victim of domestic violence. (Defs' 56.1 St. ¶¶ 49, 55; Pl's 56.1 Resp. ¶¶ 49, 55.) Feliz denied being a victim of domestic violence, but gave vague, wavering answers about the events leading to the shooting. (Defs' 56.1 St. ¶¶ 56-57; Pl's 56.1 Resp. ¶¶ 56-57.) Feliz did disclose that Guerrero was an NYPD sergeant stationed in the Bronx. (Defs' 56.1 St. ¶ 78; Pl's 56.1 Resp. ¶ 78.)

YPD officers were also dispatched to Feliz's apartment to gather evidence. (Defs' 56.1 St. ¶ 70; Pl's 56.1 Resp. ¶ 70; Ex. M to Chafizadeh Decl. (Dkt. 43-14) at 3; Ex. P to Chafizadeh Decl.

---

[5] Legal conclusions are not statements of fact and cannot dispute an opposing party's statements of fact. *BellSouth Telecomm., Inc. v. W&R Gracy & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996). The legal conclusions made in Guerrero's 56.1 response are thus irrelevant for the purposes of ascertaining genuine disputes of fact and are disregarded by the court. (*See, e.g.*, Pl's 56.1 Resp. ¶¶ 40-41.)

(Dkt. 43-17) at 1.)[6] There they were met by Jurgen Feliz-Sanchez and Yerita Vasquez, Feliz's brother and sister-in-law, who informed them that Guerrero was a member of the NYPD and had previously threatened Feliz with violence. (Defs' 56.1 St. ¶¶ 71, 73-74; Pl's 56.1 Resp. ¶¶ 71, 73-74; Ex. M to Chafizadeh Decl. at 3; Ex. P to Chafizadeh Decl. at 1.) The officers then notified their supervisors that Guerrero was an NYPD officer and transported Feliz-Sanchez and Vasquez back to the Detective Division. (Defs' 56.1 St. ¶¶ 75-76; Pl's 56.1 Resp. ¶¶ 75-76; Ex. P to Chafizadeh Decl. at 1.)

Officers Spink and Brady eventually transported Guerrero to the YPD Detective Division, but did not place him under arrest. (Defs' 56.1 St. ¶¶ 61-63; 65-66; Pl's 56.1 Resp. ¶¶ 61-63; 65-66; Ex. F to Chafizadeh Decl. (Dkt. 43-7) at 58:25-60:22; Ex. G to Chafizadeh Decl. (Dkt. 43-8) at 10:7-11:23, 14:23-15:10.)[7] While there,

---

[6] Guerrero disputes paragraphs 70-75 in Defendants' 56.1 statement on the grounds that they rely on inadmissible hearsay and lack veracity. (Pl's 56.1 Resp. ¶¶ 70-75.) These paragraphs draw heavily on Exhibits M and P to the Chafizadeh Declaration, which are supplemental police reports prepared by the YPD. (*See* Ex. M to Chafizadeh Decl.; Ex. P to Chafizadeh Decl.) Police reports detailing firsthand observations of the officer are admissible as an exception to the hearsay rule either as a business record under Federal Rule of Evidence 803(6) or a public record under Federal Rule of Evidence 803(8). *See Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 605-06 (S.D.N.Y. 2013) (citing cases). Third-party statements contained in police reports may raise hearsay issues if offered for the truth of the matter asserted, *id.*, though not where they are offered for the purpose of establishing whether there was probable cause for an arrest. *See Sheikh*, 2008 WL 5146645, at *1 n.3. As the existence of probable cause for Guerrero's arrest is the principal focus of this court's inquiry, the court does not find that reliance on these supplemental police reports and the statements contained therein raises hearsay issues. The court thus accepts paragraphs 70-75 in the Defendants' 56.1 statements, which are supported by the record, over Guerrero's hearsay objections.

[7] Guerrero disputes paragraphs 61-63 and 65-66 in Defendants' 56.1 statement, but does not cite to any contradictory evidence. Rather, Guerrero

Guerrero confirmed to YPD officers that he was an NYPD sergeant and requested an attorney and union representative. (Defs' 56.1 St. ¶¶ 85-86; Pl's 56.1 Resp. ¶¶ 85-86.) At no point did Guerrero indicate that he was involved in a physical altercation with Feliz. (Defs' 56.1 St. ¶ 87; Pl's 56.1 Resp. ¶ 87.)

After Feliz was discharged from the hospital, Detectives Madaus and Mullin transported her to the Detective Division to give a written statement. (Defs' 56.1 St. ¶ 81; Pl's 56.1 Resp. ¶ 81.)[8] While en route, and after the detectives mentioned that they wanted to drive down to the scene of the shooting, Feliz mentioned that she was actually shot inside Guerrero's apartment and not on the street outside her apartment. (Defs' 56.1 St. ¶¶ 82-83; Pl's 56.1 Resp. ¶¶ 82-83.) When they arrived at the Detective Division, Feliz was placed in an interview room with Madaus. (Defs' 56.1 St. ¶ 90; Pl's 56.1 Resp. ¶ 90.)[9] Madaus then interviewed Feliz in English, taking periodic breaks for Feliz to use the

---

cites to portions of his own deposition where he stated that he was transported to the police station, was told he was not under arrest, and was placed in a locked room. (Pl's 56.1 Resp. ¶¶ 61-66 (citing Ex. 17 to Sanders Decl. at 66-80).) None of this testimony is inconsistent with the factual assertions made in Defendants' 56.1. statement, (Defs' 56.1 St. ¶¶ 61-63, 65-66), which is reflected by the record. (*See* Ex. F to Chafizadeh Decl. at 58:25-60:22; Ex. G to Chafizadeh Decl. at 10:7-11:23, 14:23-15:4.) The court thus accepts the factual assertions made in paragraphs 61-66 of Defendants' 56.1 statements.

[8] Guerrero disputes paragraph 81, but does not cite to any contradictory evidence. Guerrero instead cites to evidence showing that Feliz was tired and medicated during her interview with Madaus, (Pl's 56.1 Resp. ¶ 81), which does not suggest that she was not transported back to the Detective Division to give a written statement. The court thus accepts the facts in paragraph 81 in Defendants' 56.1 statement as true.

[9] Here, as is done throughout Guerrero's 56.1 response, an admission is made along with a citation to evidence in the record that is unrelated to the assertion made in the numbered paragraph, but supports Guerrero's telling of events. (Pl's 56.1 Resp. ¶ 90; *see also id.* ¶¶ 94, 105, 110, 112-19, 121, 125, 127-29, 131, 134.) "If the opposing party [] fails to controvert a

bathroom, change clothes, and drink tea. (Defs' 56.1 St. ¶¶ 90, 95; Pl's 56.1 Resp. ¶¶ 90, 95.) Feliz never mentioned that she could not speak or understand English and appeared able to communicate with Madaus freely. (Defs' 56.1 St. ¶ 94; Pl's 56.1 Resp. ¶ 94; *see generally* Ex. T to Chafizadeh Decl. (Dkt. 43-21).)

Feliz then described to Madaus a new account of the night's events. She stated that she was driving her son home when she saw Guerrero dropping off a female student from his karate class. (Defs' 56.1 St. ¶¶ 106-07; Pl's 56.1 Resp. ¶¶ 106-07.) Upset that Guerrero had apparently lied about his whereabouts, Feliz called him seeking answers; he did not pick up. (Defs' 56.1 St. ¶¶ 109, 111; Pl's 56.1 Resp. ¶¶ 109, 111.) Feliz then went to Guerrero's apartment to confront him and discuss the state of their relationship. (Defs' 56.1 St. ¶ 110; Pl's 56.1 Resp. ¶ 110.) When she arrived, Guerrero became aggressive, grabbed his handgun from a nearby table, and began swinging it around. (Defs' 56.1 St. ¶¶ 112-14; Pl's 56.1 Resp. ¶¶ 112-14.) Feliz demonstrated this motion to Madaus by repeatedly picking up a roll of toilet paper and waving it around. (Defs' 56.1 St. ¶¶ 115, 129; Pl's 56.1 Resp. ¶ 115, 129.) The gun then accidentally discharged and a bullet struck Feliz in the neck. (Defs' 56.1 St. ¶ 116; Pl's 56.1 Resp. ¶ 116.) In a frenzy, Guerrero drove Feliz to the hospital. (Defs' 56.1 St. ¶ 117; Pl's 56.1 Resp. ¶ 117.) Feliz explained that she fabricated the story about being shot outside her apartment because she did not want Guerrero to get into trouble with his employer, the NYPD. (Defs' 56.1 St. ¶¶ 118-19; Pl's 56.1 Resp. ¶¶ 118-19.)

Feliz also disclosed prior incidents of physicality with Guerrero. She told Madaus that she had previously hit Guerrero during arguments, but that he did not reciprocate. (Defs' 56.1 St. ¶ 101;

---

fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannulo*, 322 F.3d at 140. In these instances, the court accepts the factual assertions made in the Defendants' 56.1 statement as true.

Pl's 56.1 Resp. ¶ 101.) Guerrero physically harmed her for the first time, however, the prior Sunday when he grabbed her arms and caused visible bruising. (Defs' 56.1 St. ¶ 105; Pl's 56.1 Resp. ¶ 105.) At one point, Feliz agreed with Madaus's observation that recent interactions with Guerrero over the prior few days had escalated physically. (Defs' 56.1 St. ¶ 120; Pl's 56.1 Resp. ¶ 120.)

Toward the end of the interview, Madaus explained that she would type up a written statement memorializing Feliz's telling of the events. (Defs' 56.1 St. ¶ 121; Pl's 56.1 Resp. ¶ 121.) Madaus then typed up a statement with Feliz sitting by her side, pointing out changes where appropriate, and putting facts in her own words. (Defs' 56.1 St. ¶¶ 123, 125, 127-28; Pl's 56.1 Resp. ¶¶ 123, 125, 127-28.) Feliz then reviewed and signed the statement, which attested to the same narrative that she had just given. (Defs' 56.1 St. ¶¶ 131, 134; Pl's 56.1 Resp. ¶¶ 131, 134.) The interview concluded at approximately 6:00 a.m. on December 24, 2015. (Defs' 56.1 St. ¶ 135; Pl's 56.1 Resp. ¶ 135.)

Then, after Detective Sergeant DeMatteo, Madaus's supervisor, determined that there was probable cause, Guerrero was arrested and booked on (1) assault in the second degree (N.Y. Penal Law § 120.05), and (2) reckless endangerment in the first degree. (N.Y. Penal Law § 120.25.) (Defs' 56.1 St. ¶¶ 136, 141; Pl's 56.1 Resp. ¶¶ 136, 141; Ex. D to Chafizadeh Decl. (Dkt. 43-5) at 38:7-13.)[10]

During a grand jury proceeding on June 8, 2016, Feliz again changed her story, testifying that she entered Guerrero's apartment, assaulted him, grabbed his gun, and was shot when Guerrero tried to disarm her. (Defs' 56.1 St. ¶¶ 166-67; Pl's 56.1

---

[10] Guerrero denies the assertion made in paragraph 136, but does not cite any evidence controverting the fact that Detective Sergeant DeMatteo made a determination that there was probable cause for an arrest. (Pl's 56.1 Resp. ¶ 136.)

8

Resp. ¶¶ 166-67.)[11] Guerrero testified to the same effect and further claimed that he was the victim of repeated verbal abuse and domestic violence from Feliz. (Defs' 56.1 St. ¶¶ 170-74; Pl's 56.1 Resp. ¶¶ 170-74.) Ultimately, the Assistant District Attorney prosecuting Guerrero withdrew the charges against him before the case was submitted to the grand jury for deliberation "based on the evidence that ha[d] been presented." (Defs' 56.1 St. ¶¶ 176-77; Pl's 56.1 Resp. ¶¶ 176-77.) Guerrero was, however, later terminated from the NYPD. (Defs' 56.1 St. ¶ 197; Pl's 56.1 Resp. ¶ 197.)

### B. Procedural Posture

Guerrero filed the instant Complaint on September 24, 2018, alleging various claims against the Cities of New York and Yonkers, as well as individual officers with the NYPD and YPD. (*See generally* Compl. (Dkt. 1).) On February 5, 2020, this court dismissed certain parties and claims from the action. (*See* Feb. 4, 2020 M&O (Dkt. 28) at 13.) The following claims remained: (1) a § 1983 claim for false arrest against Detective Madaus; (2) a § 1983 claim for malicious prosecution against Detective Madaus; and (3) a claim for *Monell* liability against the City of Yonkers. (*See id.*; Compl. ¶¶ 132-171.)

The parties completed briefing on Defendants' motion for summary judgment on November 18, 2021. (*See* Dkts. 43-46.) Thereafter, Guerrero brought a separate suit arising from the same facts against a similar set of Defendants, *Guerrero v. DeMatteo* (No. 22-CV-1217 (NGG) (RER)). The court stayed a decision on the Defendants' motion for summary judgment pending the resolution of the proposed motion to dismiss in *DeMatteo*. (*See* 06/28/2022 Text Order.) On August 7, 2023, the court lifted this stay after dismissing the complaint in *DeMatteo*. At long

---

[11] She testified to the same effect in an NYPD disciplinary hearing in 2017. (Defs' 56.1 St. ¶¶ 185-87; Pl's 56.1 Resp. ¶¶ 185-87.)

9

last, the court turns to Defendants' motion for summary judgment in the instant matter.

## II. LEGAL STANDARD

The court's role on a motion for summary judgment "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014) (quoting *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006)).[12] Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." *Am. Empire Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 16-CV-5664 (AMD) (JO), 2018 WL 10456838, at *4 (E.D.N.Y. July 23, 2018) (quoting Fed. R. Civ. P. 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of fact cannot be established by "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). "[T]he party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Certain Underwriters*, 2018 WL 10456838, at *4. If the non-movant is unable to establish that each element is at least reasonably disputed based on the evidentiary record, the motion should be granted.

---

[12] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

### III. DISCUSSION

#### A. False Arrest

Claims for false arrest or malicious prosecution under § 1983 to vindicate Fourth and Fourteenth Amendment rights are "substantially the same" as claims for false arrest or malicious prosecution under state law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Federal courts analyzing these claims adopt the same standards used in the applicable state's tort law. *Borges v. City of New York*, 621 F. Supp. 3d 362, 367 (E.D.N.Y. 2022). Under New York law, a false arrest claim requires showing that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Borisova v. Friberg*, No. 18-CV-7440 (AMD) (SJB), 2023 WL 5045090, at *8 (E.D.N.Y. Aug. 8, 2023) (quoting *Jocks*, 316 F.3d 134-35).

The existence of probable cause is an "complete defense" to a false arrest claim. *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021). "Whether probable cause exists is assessed 'objectively' based on 'the facts known by the arresting officer at the time of the arrest.'" *See Cooper v. City of New York*, No. 17-CV-1517 (RPK) (RLM), 2022 WL 4468168, at *4 (E.D.N.Y. Sept. 26, 2022) (quoting *Jagley*, 439 F.3d at 153). "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). A putative victim's complaint may not

be enough to establish probable cause where a "bitter prior relationship" between the putative victim and arrestee is known to the arresting officer. *Nansaram v. City of New York*, No. 12-CV-5038 (NGG), 2015 WL 5475496, at *7 (E.D.N.Y. July 2, 2012), R&R adopted, 2015 WL 5518270 (E.D.N.Y. Sept. 17, 2015). Where the putative victim's credibility is in question, "an officer's further inquiry and corroboration of the facts will be sufficient to dispel concerns about the victim's veracity." *Bate v. City of New York*, No. 15-CV-2631 (PGG), 2018 WL 4757940, at *16 (S.D.N.Y. Sept. 30, 2018). An arresting officer is not, however, required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). An arrestee's protestations of innocence also do not eliminate probable cause. *Cooper v. City of New York*, No.17-CV-1517 (RPL) (RLM), 2022 WL 4468168, at *4.

Relatedly, a police officer is entitled to qualified immunity on a § 1983 false arrest claim so long as there was "*arguable probable cause* at the time of the arrest—that is, if officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (emphasis added).[13] "The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Id.*; *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

---

[13] Qualified immunity protects public officials from liability over conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Here, Guerrero was arrested on charges of assault in the second degree, in violation of N.Y. Penal Law § 120.05, and reckless endangerment in the first degree, in violation of N.Y. Penal Law § 120.25. Defendants argue that probable cause existed to arrest Guerrero on the reckless endangerment charge, or, at the very least, the decision to arrest him was objectively reasonable such that qualified immunity applies. (Mot. Summ. J. at 7, 15.) Under N.Y. Penal Law § 120.25, "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." N.Y. Penal Law § 120.25.

The decision to arrest Guerrero on this charge was based on Feliz's interview with Madaus, Feliz's signed statement, Feliz's wounds being consistent with a close-range shot, and bruising on Feliz's arms and face, which she attributed to Guerrero. In effect, the YPD based its finding of probable cause for first degree reckless endangerment on Feliz's statements describing the shooting and corroborating physical evidence. Feliz was, however, of questionable credibility at the time of these statements. For one, she had already lied to Detectives Madaus and Mullin about being shot while walking toward her apartment. Guerrero also purportedly said "why are you lying" in Spanish to Feliz while she was talking to the detectives, though it is unclear if they heard or understood this statement.[14] Feliz's subsequent change

---

[14] The parties also dispute Feliz's alertness during the interview with Madaus. (Defs' 56.1 St. ¶ 93; Pl's 56.1 Resp. ¶ 93.) Guerrero points to Feliz's subsequent testimony that she was tired, wanted to go home, and "had a lot of meds on my body" during the interview, (Ex. 18 to Sanders Decl. (Dkt. 44-18) at 95:13-20), while Madaus testified that Feliz was alert. (Ex. D to Chafizadeh Decl. at 112:3-13.) The court cannot resolve this dispute at the summary judgment stage, though it notes that Feliz was awake and cogent throughout the over two hour-long interview, during which she was given breaks for the bathroom, to change clothes, and for tea. (Defs' 56.1

of story at the grand jury and NYPD disciplinary hearing, however, postdate Guerrero's arrest and are not relevant to her credibility to the arresting officers. *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it[.]") (emphasis in original).

Of particular relevance to Feliz's credibility at the time was the suspected domestic violence context. Recantation is "not unusual in domestic violence cases," *United States v. Carthen*, 681 F.3d 94, 103 (2d Cir. 2012), and courts in this Circuit have "repeatedly recognized the pressure on domestic violence victims to recant and protest their attackers' innocence and the unreliability of those recantations." *Torres v. City of New York*, No. 20-CV-4007 (BMC), 2022 WL 955152, at *4 (E.D.N.Y. Mar. 30, 2022). In *Lee v. Sandberg*, the Second Circuit was tasked with reviewing a district court's denial of summary judgment on a § 1983 claim alleging arrest without probable cause. 136 F.3d 94, 100 (2d Cir. 1997). The district court concluded that a genuine dispute existed as to the presence of probable cause for arrest because the complaining witness—an apparent domestic violence victim— was of questionable credibility due to her conflicting reports, disheveled appearance, and erratic behavior. *Id.* The Circuit reversed, concluding that "given the extraordinarily difficult judgment decisions that law enforcement officers must make in domestic violence situations," coupled with factors suggesting that the complaining witness was not incredible, the finding of probable cause was "objectively reasonable" and implicated qualified immunity. *Id.* at 104. In *Betts v. Shearman*, Judge Oetken relied on the intra-family violence context in concluding that a

---

St. ¶¶ 90, 95; Pl's 56.1 Resp. ¶¶ 90, 95; *see generally* Ex. T to Chafizadeh Decl.)

complaining witness—again an apparent domestic violence victim—was credible enough for her statements to properly form the basis of a probable cause finding. No. 12-CV-3195 (JPO), 2013 WL 311124, at *8 (S.D.N.Y. Jan. 24, 2013). In doing so, he cited a New York law requiring police officers to effectuate an arrest where there is reasonable cause to believe that a misdemeanor constituting a family offense had been committed. (*Id.* (citing N.Y. C.P.L. § 140.10(4)(c)). In his view, this statute reflected the legislature's attempt to "eliminate indifference by law enforcement agencies when responding to reports of domestic violence and to prevent further injury to victims of family violence[.]" *Id.* (citing *Lee*, 136 F.3d at 104).

The court agrees with this approach, especially in view of the New York statute discussed in *Betts*. The Defendants here had a reasonable basis to believe that Feliz was the victim of domestic violence. She had bruising on her arms and face and a gunshot wound to the neck. During her initial interview in the hospital, Feliz appeared nervous and continuously looked at Guerrero while answering the detectives' questions. (Defs' 56.1 St. ¶ 44; Pl's 56.1 Resp. ¶ 44.) Feliz's brother and sister-in-law also told YPD officers that Guerrero had previously threatened Feliz with violence. (Defs' 56.1 St. ¶ 73; Pl's 56.1 Resp. ¶ 73.) While Feliz initially denied that she was a victim of domestic violence and claimed to have previously hit Guerrero, (Defs' 56.1 St. ¶¶ 55-56, 101; Pl's 56.1 Resp. ¶¶ 55-56, 101,) Feliz also agreed with Madaus's observation that her disputes with Guerrero had escalated physically over the prior few days. (Defs' 56.1 St. ¶ 120; Pl's 56.1 Resp. ¶ 120.) Although Guerrero later told the grand jury that he was the true victim of domestic violence, (Defs' 56.1 St. ¶ 170; Pl's 56.1 Resp. ¶ 170), the Defendants had a reasonable basis to believe that the victim was in fact Feliz at the time of Guerrero's arrest.

The probable cause finding must be viewed through this lens. Though Feliz's shifting stories raised issues about her credibility, recantation is not uncommon for victims of domestic violence. *See Felix v. N.Y. State Dep't of Corr. & Cmnty Supervision*, No. 16-CV-7978 (CS), 2018 WL 3542859, at *9 (S.D.N.Y. July 23, 2018) (citing cases). Feliz's false story about being shot outside her apartment thus did not render her subsequent account of being shot by Guerrero incredible. Relatedly, although a putative victim's complaint may not be enough to establish probable cause where a "bitter prior relationship" between the putative victim and arrestee is known to the arresting officer, *Nansaram*, 2015 WL 5475496, at *7, "the fact that a victim may be entangled in a domestic dispute does not, in and of itself, undermine the victim's veracity." *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 30-31 (E.D.N.Y. 2015). It was thus not unreasonable for the Defendants to credit Feliz's statements, which were also supported by corroborating physical evidence—bruising on her body and close-range gunshot wound to her neck. *See Powar v. City of New York*, No. 14-CV-4053 (KAM) (RER), 2016 WL 8711092, at *8 (E.D.N.Y. Sept. 30, 2016) (noting that a putative victim's veracity could be corroborated by "the officer's observation of the putative victim's physical injuries"). This evidence, taken as a whole, created at minimum arguable probable cause to arrest Guerrero for reckless endangerment. Qualified immunity thus bars liability for false arrest under § 1983.

Accordingly, the court grants Defendants' motion for summary judgment with respect to Guerrero's § 1983 false arrest claim.

### B.  Malicious Prosecution

The elements of a malicious prosecution claim under New York law include: "(1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, and (4) institution of the proceedings with actual malice." *Swartz v. Insogna*, 704 F.3d 105, 111-12 (2d Cir. 2013); *see also*

*Scott v. City of New York*, No. 16-CV-834 (NGG) (ST), 2020 WL 208915, at *6 (E.D.N.Y. Jan. 14, 2020).

To initiate a prosecution, a defendant must "play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010). "A police officer may be found to have initiated a criminal proceeding by withholding material exculpatory evidence from the prosecutor, or knowingly creating false information that created the basis for the prosecution." *Stukes v. City of New York*, No. 13-CV-6166 (NGG) (VVP), 2015 WL 1246542, at *9 (E.D.N.Y. Mar. 17, 2015). Moreover, as is the case with false arrest, the existence of probable cause is a complete defense to a malicious prosecution claim. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Actual malice can also be shown by proving "that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Manganiello*, 612 F.3d at 160. This is usually "inferred from the facts and circumstances of the investigation[,]" *Davis v. City of New York*, 373 F. Supp. 2d 322, 335 (S.D.N.Y. 2005), and is presumed when there is a lack of probable cause. *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003).

Guerrero's malicious prosecution claim fails on multiple bases. To start, as discussed above, there was arguably probable cause to arrest Guerrero. Qualified immunity thus insulates Madaus from liability. Even if it did not, however, the claim would still fail because Madaus did not initiate the prosecution; an Assistant District Attorney presented the case against Guerrero to a grand jury. (Defs' 56.1 St. ¶ 177; Pl's 56.1 Resp. ¶ 177.) There is no indication that Madaus "[gave] advice and encouragement" or "imput[ed] the authorities to act," thereby playing an active role in the prosecution. *Manganiello*, 612 F.3d at 163. Guerrero asserts that Madaus "manufactured inculpatory evidence excluding

17

exculpatory evidence" and lists eleven different exhibits or reports prepared by YPD officers that were purportedly fabricated. (Opp. at 10-11.) He does not, however, provide *any* citation to specific evidence to support this broad assertion. Nor is there a citation to evidence supporting fabrication in the parties' briefing or Rule 56.1 statements. "Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. V. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). Absent such citations to the record, the court cannot accept Guerrero's argument of fabrication; there is no genuine dispute as to this fact.

Finally, because the court has not found a lack of probable cause, malice cannot be assumed. Guerrero has not pointed to any direct evidence in the record showing malice, nor has he explained why it can be inferred from Madaus's conducts. From its review of the record, the court cannot discern any "improper or wrongful motives," animating Madaus, or that she acted in "reckless disregard" of Guerrero's rights. *Manganiello*, 612 F.3d at 160.[15]

The court therefore grants Defendants' motion for summary judgment on Guerrero's malicious prosecution claim.

---

[15] The Defendants also argue that § 1983's favorable termination requirement has not been met because charges against Guerrero were dismissed without an express finding of innocence. (Mot. Summ. J. at 19; Reply at 7.) Since briefing on this motion was completed, the Supreme Court held that favorable termination for a § 1983 malicious prosecution claim only requires a plaintiff to show that the criminal prosecution ended without a conviction, not with some affirmative indication of innocence. *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022). This new precedent defeats the Defendants' argument for dismissal for want of favorable termination. Nonetheless, Guerrero's malicious prosecution claim fails for other reasons.

### C. *Monell* Liability

Guerrero also brings a § 1983 *Monell* claim against the City of Yonkers. (Compl. ¶¶ 146-151.) In the absence of a deprivation of a constitutional right, there can be no *Monell* liability for a municipality. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97-98 (2d Cir. 2020) ("The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."). The court has granted the Defendants' motion for summary judgment on Guerrero's § 1983 false arrest and malicious prosecution claims. There is thus no surviving claim for an underlying constitutional deprivation. Guerrero's *Monell* claim against the City of Yonkers thus fails.

D.      Conclusion

In sum, the Defendants' motion for summary judgment is GRANTED.[16] Guerrero's claims against Defendants are dismissed in full.


SO ORDERED.


Dated:   Brooklyn, New York
         September 19, 2023

                                             s/Nicholas G. Garaufis
                                             NICHOLAS G. GARAUFIS
                                             United States District Judge

---

[16] The Defendants also argue that they cannot be held liable for losses stemming from Guerrero's termination from the NYPD. (Mot. Summ. J. at 23-25; Reply at 10.) Because the court grants summary judgment for the Defendants on all of Guerrero's claims, it need not determine the scope of recoverable damages.